**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **MELVIN B. CLARK,** | : | **Case No. 2:24-cv-4179** |
| | : | |
| **Petitioner,** | : | |
| | : | **Judge Edmund A. Sargus, Jr.** |
| **vs.** | : | **Magistrate Judge S. Courter Shimeall** |
| | : | |
| **FRANKLIN COUNTY** | : | |
| **PROBATION DEPARTMENT** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATIONS

Melvin B. Clark, a state probationer proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (ECF No. 5), the Return of Writ (ECF No. 9), and the state court record. (ECF No. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8, 10-1). For the reasons that follow, it is **RECOMMENDED** that this action be **DENIED** and **DISMISSED**.

## I. FACTUAL BACKGROUND

On October 1, 2020, a Franklin County, Ohio, grand jury indicted Clark on one count of improperly handling firearms in a motor vehicle in violation of Ohio Rev. Code Ann. § 2923.16, and one count of carrying a concealed weapon in violation of Ohio Rev. Code Ann. § 2923.12.

The following represents the relevant facts and procedural history as reported by the Tenth District Court of Appeals (the "Court of Appeals"):

> {¶ 2} On July 20, 2020, two officers from the Columbus Police Department were dispatched to investigate a report of a disturbance on Squam Road in Franklin County, Ohio. The officers spoke with the woman who had called in the report; she stated that a man who was her daughter's boyfriend, or the father of her daughter's

> child, had been pounding on her door. She saw the man holding his hand under his shirt and feared he might have a firearm. The woman told officers the man was in a white Kia vehicle with a Georgia license plate.
>
> {¶ 3} While walking back to their cruiser after speaking with the woman, the officers noticed a vehicle matching the description they had been given. Clark was in the vehicle and appeared to be asleep. The officers approached the vehicle and one of them knocked on the window. Both officers testified they smelled burnt marijuana when Clark rolled the window down to speak with them. One of the officers asked Clark to exit the vehicle. Clark instead reached for his cell phone. The officer then used his hands to guide Clark out of the vehicle and conducted a pat-down search. The officer moved Clark to the area behind the vehicle and asked why Clark was there. After Clark explained that he was trying to visit his son, the officer asked if there was anything illegal in the vehicle. Clark responded there was nothing illegal in the vehicle and told the officers they could search it.
>
> {¶ 4} One of the officers searched Clark's vehicle and found an open zippered bag under the driver's seat. The bag contained a loaded firearm. The officer secured the firearm and placed Clark under arrest.
>
> {¶ 5} Clark was indicted on one count of improperly handling a firearm in a motor vehicle, a fourth-degree felony in violation of R.C. 2923.16, and one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12. Throughout the proceedings, Clark acted pro se; the trial court appointed stand-by counsel to assist him. Clark filed numerous pretrial motions and other documents, including motions to dismiss and a motion to suppress the firearm found during the search of his vehicle. The trial court denied Clark's motion to suppress without conducting an evidentiary hearing on it and denied Clark's motions to dismiss.
>
> {¶ 6} Immediately before trial, the state dismissed the charge of carrying a concealed weapon. Plaintiff-appellee, State of Ohio, presented testimony at trial from the two officers who arrested Clark and from a forensic scientist who testified to the operability of the firearm. At the close of trial, the jury found Clark guilty of improperly handling a firearm. The trial court conducted a sentencing hearing and sentenced Clark to a four-year term of community control supervision, with certain conditions.

*State v. Clark*, 2024-Ohio-1869, ¶¶ 2-6, *appeal not allowed*, *State v. Clark*, 175 Ohio St. 3d 1446 (2024) (ECF No. 7-7 at PageID# 834–35).

Clark appealed his conviction to the Court of Appeals (*id.* at PageID# 717–42), asserting two assignments of error:

> (1) The trial court erred by denying [Clark's] Motion to Suppress without an evidentiary hearing, in violation of the Ohio Rules of Criminal Procedure and his

> rights to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> (2) [Clark's] conviction is in violation of his rights to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Ohio Constitution.

(*Id.* at PageID# 721). On May 14, 2024, the Court of Appeals issued a decision affirming Clark's conviction. *Clark*, 175 Ohio St. 3d 1446, (ECF No. 7-7 at PageID# 834–43).

Clark filed a Notice of Appeal and a Memorandum in Support of Jurisdiction with the Ohio Supreme Court. (*Id.* at PageID# 848-861). He asserted a single proposition of law:

> A defendant's right to keep and bear arms under the Second Amendment to the U.S. Const. art. I, Section 4 of the Ohio constitution is violated when he is convicted of improperly handling a firearm in a vehicle for merely possessing a loaded firearm in a car.

(*Id.* at 851–61). On September 3, 2024, the Ohio Supreme Court declined jurisdiction. (ECF No. 7-8 at PageID# 876).

On February 26, 2025, Clark initiated postconviction proceedings in the Franklin County Court of Common Pleas. (ECF No. 7-4 at PageID# 488–91). Citing *D.C. v. Heller*, 554 U.S. 570 (2008), *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), Clark argued that his conviction violated his Second Amendment rights. (ECF No. 7-4 at PageID# 488–91). The state filed an answer, arguing that Clark's postconviction petition should be dismissed because it was untimely and barred by res judicata. (*Id.* at PageID# 492–504). The Franklin County Court of Common Pleas agreed and entered an order on March 25, 2025, dismissing Clark's postconviction petition as untimely, barred by res judicata, and meritless. (*Id.* at PageID# 533–38).

There is no indication in the record that Clark appealed the dismissal of his postconviction petition.

## II. FEDERAL HABEAS PROCEEDINGS

On February 13, 2025, Clark filed his federal habeas petition. He asserts four grounds for relief:

**GROUND ONE**: Probable Cause Unlawful Arrest.

**Supporting Facts:** The Ohio Court of Appeals accepted the argument of the fourth amendment rights however they misunderstood that I did not object to a search of my property, I objected to consent of the SEIZURE of my property protected by the second amendment. A luger handgun with no advance attachments or specs does not constitute a weapon within the scope warranting a seizure because it is in common use among the states. The arresting officers did not have probable cause or a valid basis for the arrest, arguing that a "simple possession" of a firearm, without more, does not constitute a criminal act.

**GROUND TWO:** Violation of Constitutional Rights.

**Supporting Facts:** Second Amendment: The plain text and history of the second amendment protect my right to possess a firearm. Fourth Amendment: My rights against unreasonable searches and seizures were violated, no valid search warrant or probable cause justified the police SEIZURE of my firearm. Fifth and Sixth Amendments: I was denied a fair and speedy trial, as well as the right to confront witnesses against me, a violation of due process and the Confrontation Clause. Ninth and Fourteenth Amendments: other unenumerated rights are being denied, particularly my right to equal protection and due process under the law.

**GROUND THREE:** Procedural Issues.

**Supporting Facts:** Failure to Provide a Jury Trial: I requested a speedy trial in my initial filings and did not get one in the procedural time period. Failure to Address Counterclaims and Affirmative Relief: My counterclaims and affirmative motions have been disregarded by the court without proper consideration.

**GROUND FOUR:** Case Law Citations to Support Constitutional and Procedural Rights.

**Supporting Facts:** I used citations such as *Tanzin v. Tanvir* (affirming the right to seek redress against government officials) and *Murdock v. Pennsylvania* (governments cannot impose conditions (like a licensing fee) on the

> exercise of a fundamental right) among others, to reinforce his arguments on due process and constitutional rights.

(ECF No. 5 at PageID# 30, 32, 33, 35). The Court construes Ground Four as a set of citations supporting Grounds One, Two, and Three, rather than stating its own substantive ground for relief.[1]

Respondent filed a Return of Writ arguing that all of Clark's claims are procedurally defaulted. (ECF No. 9). Respondent argues that every claim except the Second Amendment claim is unexhausted and therefore procedurally defaulted. (*Id.* at PageID# 893). Respondent contends that Clark's Second Amendment claim is exhausted but is procedurally defaulted for a different reason because the Court of Appeals found it to be waived. (*Id.* at PageID# 897–99). Clark has not replied to Respondent's procedural defenses.

## III. STANDARDS OF REVIEW

### A. AEDPA

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential

[1] To the extent that Clark contends that Ground Four asserts grounds for habeas relief, it should be dismissed. A habeas petitioner must do more than rely on conclusory allegations to obtain relief. *See, e.g.*, *Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007); *Alexander v. Rewerts*, No. 18-2211, 2019 WL 5306840, at *2 (6th Cir. Jan. 18, 2019).

standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where

they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**B. Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular

claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987), *abrogated on other grounds* by *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)).

To "fairly presenting" a claim to the state courts, a habeas petitioner must give the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted." "A common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

The Sixth Circuit employs a three-prong test, initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*, 785 F.2d 135)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson*, 493 F. App'x at 669; *see also Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright*, 433 U.S. at 87.

## IV. DISCUSSION

### A. Procedural Default

Respondent argues that all grounds for relief except for Clark's Second Amendment claim are procedurally defaulted because he failed to raise them with the Ohio state courts. (ECF No. 9 at PageID# 893).

To exhaust state court remedies, a claim must be fairly presented "to every level of the state courts in one full round." *Ambrose v. Romanowski*, 621 F. App'x 808, 814 (6th Cir. 2015). A petitioner may procedurally default a claim by failing to raise a claim in state court and thereby failing pursue that claim through the state's "ordinary appellate review procedure." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).

The only claim in Clark's habeas petition that was presented to both the Court of Appeals and the Ohio Supreme Court is his Second Amendment claim found in Ground Two. The deadlines have long passed for Clark to properly present the defaulted claims to both the Court of Appeals and Ohio Supreme Court. *See* Ohio App. R. 4, Ohio S. Ct. Prac. R. 7.01. For this reason, the remaining claims are procedurally defaulted.[2] Clark offers no potential excuse for the procedural default. In any event, as explained below, all of Clark's claims fail on the merits.

Noted above, Clark's Second Amendment claim was the sole claim presented to both the Court of Appeals and the Ohio Supreme Court. Respondents argue, however, that this claim is also procedurally defaulted under the independent and adequate state ground doctrine because the Court of Appeals considered it waived. (ECF No. 9 at PageID# 897–99). The Court disagrees.

Clark represented himself at trial with the assistance of stand-by counsel. (ECF No. 7-3 at PageID# 215–84). Before trial, the court addressed pretrial motions. (ECF No. at PageID# 228-273). Clark brought up the Supreme Court decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), stating, "But also on June 23rd the Supreme Court decided basically the

[2] Respondent argues that Clark's Fourth Amendment claim is procedurally defaulted because Clark raised a state-law-only procedural argument in his direct appeal. (ECF No. 9 at PageID# 895–96). The Court disagrees. On direct appeal, Clark specifically argued that the trial court violated his due process rights under the United States Constitution when it denied his motion to suppress without a hearing. (ECF No. 7-7 at PageID# 721). The Court of Appeals concluded that the trial court erred by failing to hold an evidentiary hearing, but the error was harmless because the officers testified at trial that Clark consented to the search that yielded the firearm at issue. (*Id.* at PageID# 836–39). In any event, Clark procedurally defaulted his Fourth Amendment claim because he failed to appeal the claim to the Ohio Supreme Court. (*See* ECF No. 7-8 at PageID# 851-861).

Respondent also argues that Clark's petition for a writ of mandamus was insufficient to exhaust Clark's speedy trial claim. (ECF No. 9 at PageID# 894–95). During the trial court proceedings, Clark filed a petition for a writ of mandamus to the Court of Appeals complaining that the trial court failed to rule on pending motions. (ECF No. 7-5 at PageID# 552–67). The Court of Appeals dismissed Clark's petition, seeming to find both that the trial court already ruled on the motions or Clark's request was premature because the motions had not been pending for more than one hundred and twenty days. (*Id.* at PageID# 651–56, 672–81). In any event, the Court need not address this issue: even if any of the claims included in Grounds Two and Three could be construed as included in Clark's petition for a writ of mandamus, the claims are procedurally defaulted because they were not presented to the Ohio Supreme Court.

same thing, is there can't be restrictions on firearms." (*Id.* at PageID# 236). The trial court later asked Clark whether he intended to introduce any affirmative defenses. (ECF No. 7-3 at PageID# 251). Clark responded,

> Besides the Constitution, no…. Right. I'm going to use necessity as my affirmative—affirmative defense, being that it is a protected right in the Constitution and the founding fathers decided to protect the right constitutionally as well as it's in the Constitution of the State of Ohio—I believe it's the sixth amendment as well as Benjamin Franklin, who is a founding father of this nation, is quoted by saying they can't—they that can give up essential liberty to obtain a little temporary safety deserve neither liberty nor safety. And so, the necessity of the liberty to possess, own, and use a gun freely for safety, for protection, for all the means and it being echoed in the Constitution is why—is the affirmative defense that I'm going to use.

(*Id.* at PageID# 251-252). The state responded by moving in limine for an order prohibiting Clark from mentioning the federal Constitution to the jury. (*Id.* at PageID# 252-255). The state argued that the question of whether the Ohio statute was unconstitutional under the Second Amendment was a legal question for the trial court to resolve and should not be presented to the jury:

> To the extent that he references the Constitution and some apparent right to have it have a firearm in contravention of state law and to the extent that a little bit earlier he referenced the New York Supreme—U.S. Supreme Court case that came down in June of this year and he suggested that that stood for the proposition that you could not restrict an individual's possession of a firearm, that is not what *New York State Rifle and Pistol Association v. Bruen* says. I've actually lectured on it. I'm quite familiar with it. It says that there are still reasonable restrictions that may be placed, and what New York did was deemed not to be reasonable.
>
> That being said, that is not a question for a jury to be asked. That is a question for the Court to be asked as to whether or not the state's law is constitutional or not. And barring the defendant filing and to the extent that he either has or has not filed something to that extent and to the extent that the Court has or has not already ruled on such a thing in the numerous filings that the defendant has made, the state does fully believe that 2923.16 is constitutional. It is a law that passes the U.S. Constitution muster. It is a law that passes the Ohio Constitution muster in that it is a constitutional law, and as such, any argument that it is not should not be allowed. Any argument that the—that the U.S. Constitution or some other Constitution offers some guaranteed right that cannot be abridged by the state should not be allowed because that is not the law in the State of Ohio. The law in the State of Ohio is clear. There have been challenges to the improper handling statute. There

> have been challenges to the carrying concealed weapons statute, which are akin to one another in their nature, and those challenges have been based upon claims or allegations that they violate the U.S. Constitution or the Ohio Constitution. Those claims have been uniformly rejected. As such, the first thing that the state would ask is that there be any bar from the defendant arguing to this jury during this trial that the Ohio—that the Ohio law on improper handling, 2923.16, does not apply to him for some reason unless there is something in the statute that be believes creates an exception for him. And I have reviewed that statute, and I do not believe there is such a thing. So for those reasons, I would ask that the defense be barred from what it phrased, at least initially, as a necessity affirmative defense and specifically from any comments or arguments to the jury about the law of the State of Ohio not applying to him or that the Constitution or some other law grants him some inalienable right to have a firearm despite what the Ohio law says.

(*Id.* at PageID# 253-255).

Clark opposed the state's motion in limine:

> I feel like I'm being misunderstood. *In no way am I suggesting that the Ohio law is unconstitutional*. *What I'm suggesting is that the way that the prosecution is using to apply the law to me is unconstitutional*. It's like saying—okay, specifically like he was saying how it's addressed in the code. In general provisions of the Ohio code 2901.01, it defines privilege, and privilege means an immunity, license, or right conferred by law, bestowed or expressed. So I'm expressing that it is expressed in law that I have a right to possess a gun. They're expressing that because of transporting it in a specific type of, way or whatever the case may be, that I am breaking the law. I'm suggesting to you where am I transporting—I mean, there's no transporting transportation. I was asleep in a car. There never was in motion, in transit, or anything for them to have to say that the—the gun was being transported. Yes, I was in a car, but, no, it wasn't traffic stop. It wasn't a—they're not applying the law in the correct way, and I had a conversation about this as far as mens rea, that they have to prove—they have the—the—they have the things to say that I have—I have the elements of the crime. Like I have a gun, correct? But I wasn't using or that gun isn't—it isn't being used in the application that the state is trying to specify, which they're trying to say is I'm specifically transporting it from point A to point B. They can't prove that because in no way was I in transit or any way. No way was I in motion. No way was I moving. They didn't stop me in any type of way, and so that's what I'm specifying is that I'm not saying that the law is wrong and that they can't use it against me. I'm saying that the way that they're trying to use the law against me isn't isn't correct. They—they just use a charge that has the elements and saying, oh, because you're around and there's a knife there it must have been you take stabbed this person. Okay. Okay. I'm the only person there. Sure. We're here in court and I—you know, but that's not saying that I did anything and I'm that's what I've been trying to express through my, you know, documentation.

(*Id.* at PageID# 256–58). The trial court specifically asked Clark if he was conceding a constitutional defense. (*Id.* at PageID# 258). Clark responded, "My argument is the way that the prosecution is going about prosecuting me is unconstitutional." (*Id.*).

The trial court granted the state's motion in limine, which prohibited Clark from "argu[ing] that you are relying on the federal Constitution or the state Constitution's grant of authority or the right for anyone such as yourself to carry, possess, have, or transport a firearm pursuant to federal law." (*Id.* at PageID# 259). The trial court never addressed the constitutional question that Clark raised concerning the Supreme Court opinion in *Bruen* or the state's argument that *Bruen* did not render the Ohio statute unconstitutional.

After the trial court ordered Clark not to discuss the federal constitution, Clark continued:

> Again, I bring—I bring the attention back to state code 2901.01, which is the general provisions of definitions, and it defines "privilege," the privilege to be able to do et cetera, et cetera, from going outside to possessing a, quote/unquote, firearm. It specifi[e]s that privilege means an immunity, a license, or a right conferred by law bestowed and express or implied, express or implied. So the implicit—so the implicity—so you suggesting that—I'm not saying that it's implicit or anything. I'm saying that it's expressed. It's expressed in these laws, which include the federal Constitution and the state Constitution. That's what I'm suggesting. I'm not saying that—
>
> ***
>
> No. That's all I was saying, is that it's implied. specifically expressed. It doesn't say that was it isn't specifically, but I can infer and I can imply it from the definition that is given from what privilege is, and I can imply it from the rights that are inferred from the Bill of Rights of not only the State of Ohio, which is the Sixth Amendment of the State of Ohio, I believe is the gun—is the gun possession and then the Second Amendment of the federal Constitution. So it's not as if I'm trying to bring a federal argument to the court. I'm just saying that the state has defined what privilege is, and I'm using that privilege to express what I—what I was doing, quote/unquote, or what I'm—yeah.

(*Id.* at PageID# 260–61). The trial court reiterated to Clark that he could not discuss with the jury his right to carry a firearm under the Constitution. (*Id.* at PageID# 262). After he was instructed more than once that he could not argue the federal constitution, Clark said, "So I'm keeping it on

the Ohio codes and laws. I'm not making it a federal argument. I just need to make that distinction." (*Id.* at PageID# 265).

The Court of Appeals cited *State v. Buttery*, 162 Ohio St. 3d 10 (2020), for the state rule that "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court (ECF No. 7-7 at PageID# 839–42) and concluded that Clark failed to comply:

> Taking Clark's pretrial statements as a whole, we conclude he affirmatively disclaimed any facial or as-applied constitutional challenge to R.C. 2923.16. Although Clark's written filings and in-court statements touched on concepts of constitutionality, immediately before trial Clark directly asserted he was "[i]n no way*** suggesting that the Ohio law is unconstitutional." Clark then used language suggesting an as-applied constitutional challenge, stating that "the way that the prosecution is using to apply the law to me is unconstitutional." However, in his follow-up argument in support of that assertion, Clark referred to the elements of the offense, arguing he was not transporting a gun because he was stationary and asleep in his vehicle when police arrived. That argument goes to the sufficiency of the evidence against Clark, not the constitutionality of the law as applied to him. Rather than attacking the constitutionality of the statute, Clark then attempted to argue that he fell within the license-holder exception under R.C. 2923.16(F)(5).

(*Id.* at PageID# 842).

Clark first asserted his Second Amendment rights to the arresting officers. (ECF No. 7-1 at PageID# 46, ECF No. 7-3 at PageID# 354). He filed numerous pretrial motions citing the Second Amendment (ECF No. 7-2 at PageID# 135 (stating that "the right to bear arms SHALL NOT BE INFRINGED"), PageID# 149–51(citing *D.C. v. Heller*, 554 U.S. 570 (2008), the right to bear arms), PageID# 177 (stating that "the Supreme Court has established the 2nd Amendment is incorporated by the 14th Amendment of the Constitution of the United States. The Second Amendment shall not be infringed"), PageID# 185 (stating that "Respondent has [a] privilege to bear arms that is granted by . . . the Constitution of the United States"), PageID# 199 (stating that "The people have the right to bear arms for their defense and security"), PageID# 206 (stating that

"The right to bear arms cannot be taxed with a license because it is a fundamental right")). Clark also made repeated references to the Second Amendment during oral argument on the state's motion in limine (*Id.* at PageID# 236–37, 251–52, 253–54, 258, 260–61), including a specific reference to the Supreme Court opinion in *Bruen*. (*Id.* at PageID# 236–37). The state argued the merits of *Bruen* and the fact that it was a question for the trial court to resolve and not a question for the jury. (*Id.* at PageID# 254–55). During the jury trial, Clark objected to the introduction of the firearm into evidence, stating "[a]n objection for violation of the Constitution, Fifth Amendment, Second Amendment, Fourteenth Amendment." (*Id.* at PageID# 390).

Although Clark said he was "in no way suggesting the Ohio law is unconstitutional" during oral argument on the state's motion in limine, he immediately followed that statement with one clarifying that he was making a constitutional challenge: "What I'm suggesting is that the way that the prosecution is using to apply the law to me is unconstitutional." (*Id.* at PageID# 256). While inartful, Clark made repeated assertions of a Second Amendment claim to the trial court and never said he was waiving his Second Amendment rights. Indeed, it is counterintuitive that the trial court found it necessary to impose an order prohibiting Clark from mentioning the federal Constitution to the jury if he had waived the argument.

The Court of Appeals found that Clark failed to raise the question of the statute's constitutionality with the trial court. The record clearly and convincingly demonstrates that Clark presented the Supreme Court case *Bruen* to the trial court, he argued that his case should be dismissed on Second Amendment grounds, the state opposed the argument on the merits, and the trial court failed to rule on the constitutional question. For this reason, the Court of Appeals' conclusion that Clark waived his Second Amendment claim at the trial court fails the first part of the *Maupin* test. *Maupin*, 785 F.2d at 138.

The Court of Appeals' application of a waiver under the circumstances could also be considered "inadequate" because the parsing of Clark's words in the face of repeated assertions of his rights unreasonably burdens Clark's Second Amendment claim. *See Staub v. City of Baxley*, 355 U.S. 313, 320 (1958) (holding that denial of petitioner's constitutional claims for failure to attack specific sections of the challenged ordinance was an inadequate state law ground and presented an "arid ritual of meaningless form"); *see also James v. Kentucky*, 466 U.S. 341, 349 (1984) ("Whatever springs the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice."); *Lee v. Kemna*, 534 U.S. 362, 366 (2002) ("But under the circumstances of this case, we hold that petitioner Lee, having substantially, if imperfectly, made the basic showings [of the state rule], qualifies for adjudication of his federal, due process claim. His asserted right to defend should not depend on a formal ritual . . . [that] would further no perceivable state interest."). Because Clark presented his Second Amendment argument to the trial court and the State of Ohio had an opportunity to oppose the argument on the merits at the trial court level, imposition of a waiver furthers no interest for the State of Ohio.

For these reasons, the Court declines to find Clark's Second Amendment claim to be procedurally defaulted and will review it on the merits.

**B. Merits Review of Claim Properly Before the Court**

In the part of Ground Two that is not procedurally defaulted, Clark asserts his Second Amendment right to carry arms. (ECF No. 5 at PageID# 32). He elaborates no further.

In his direct appeal, Clark argued that the Ohio statute under which he was convicted violated the Second Amendment. (ECF No. 7-7 at PageID# 735–41). Clark was convicted of violating the version of Ohio Rev. Code Ann. § 2923.16(B) in effect on July 20, 2020:

> Improperly handling firearms in a motor vehicle; return of firearm at termination of stop
>
> ***
>
> (B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.
>
> ***
>
> (5) Divisions (B) and (C) of this section do not apply to a person who transports or possesses a handgun in a motor vehicle if, at the time of that transportation or possession, both of the following apply:
>
> (a) The person transporting or possessing the handgun is either carrying a valid concealed handgun license or is an active duty member of the armed forces of the United States and is carrying a valid military identification card and documentation of successful completion of firearms training that meets or exceeds the training requirements described in division (G)(1) of section 2923.125 of the Revised Code.
>
> (b) The person transporting or possessing the handgun is not knowingly in a place described in division (B) of section 2923.126 of the Revised Code.[3]

Ohio Rev. Code Ann. § 2923.16. Clark argued in his direct appeal that this Ohio statute was unconstitutional under *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022) because it criminalized the mere possession of a handgun and the state could not show that the statute is consistent with the Nation's historical tradition of firearm regulation. (*Id.* at PageID# 738–39). Noted above, the Court of Appeals did not reach the issue because it considered the assignment of error waived.

The Second Amendment protects "the right of the people to keep and bear Arms." This right includes a "right to bear arms in public for self-defense." *Bruen*, 597 U.S. at 20. That said, the right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. As with other constitutional rights, "the right

[3] Section 2923.126 lists a series of locations not at issue in this case.

secured by the Second Amendment is not unlimited." *Id.* The Supreme Court held in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* that New York's "proper cause" licensing requirement was unconstitutional because it prevented "law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1, 71 (2022). But the Supreme Court also recognized the general viability of licensing regimes with "'narrow, objective, and definite standards'" that are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 39 (2022); *see also id.* at 79 (Kavanaugh, J., concurring) ("[T]he Court's decision does not prohibit States from imposing licensing requirements . . . .").

The Ohio statute at issue permitted transportation of a handgun in a vehicle upon proper licensure for concealed carry. The Supreme Court has never said that state licensing requirements for concealed carry violate the Second Amendment. On the contrary, the Supreme Court compared New York's public carry law to other states that use objective standards for evaluating applicants for concealed carry permits and signified that these other state laws would withstand scrutiny under the Second Amendment. *Bruen*, 597 U.S. at 13. Ohio was cited by the Supreme Court as one of those states. *Id.* at fn 1.

Unlike the regulation struck down in *Bruen*, the statute under which Clark was convicted "does not broadly restrict arms use by the public generally." *United States v. Rahimi*, 602 U.S. 680, 698 (2024). Rather, Ohio's licensure requirements are a reasonable method of screening applicants for "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 38. For this reason, Clark's Second Amendment challenge to Ohio Rev. Code Ann. § 2923.16 lacks merit and should be dismissed.

### C. Merits Review of Procedurally Defaulted Claims

*i. Ground One—Fourth Amendment*

In Ground One, Clark contends that his Fourth Amendment rights were violated with an unlawful seizure of his handgun resulting in an arrest that was not supported by probable cause. (ECF No. 5 at PageID# 30). In addition to the procedural default discussed above, Ground One should be dismissed because it is non-cognizable in federal habeas review.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). An "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Consequently, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.*

The *only* relevant question for this federal habeas Court is whether Clark was given a chance to present his Fourth Amendment claim to the Ohio state courts. Clark filed a motion to suppress (ECF No. 7-2 at PageID# 184–86) that the trial court denied (*Id.* at PageID# 111–12). Clark was not denied an opportunity to present his claim in state court and, as a result, his Fourth Amendment claim is not cognizable in habeas corpus and lacks merit.

To the extent Ground One could be interpreted to be raising a similar claim to the one Clark raised on direct appeal—that he was denied due process because the trial court failed to hold an

evidentiary hearing on his motion to suppress—that claim fails too. The Court of Appeals concluded that Clark was not prejudiced by the trial court's failure to hold a hearing on his motion to suppress because the arresting officers testified at trial that they obtained consent from Clark to search his vehicle. (ECF No. 7-7 at PageID# 836–39). And the Sixth Circuit has held that a state court's rejection of a due process argument for failure to afford an evidentiary hearing on a motion to suppress is not "contrary to or unreasonably applied the National Supreme Court's precedents."[4] *Good*, 729 F.3d at 640.

Beyond being procedurally defaulted, Ground One should also be dismissed because it is non-cognizable in federal habeas review.

*ii. Ground Two—Fifth Amendment (right to speedy trial), Sixth Amendment (right to confront witnesses), Ninth Amendment, Fourteenth Amendment (right to equal protection and due process)*

Clark raises a Sixth Amendment speedy trial claim in Ground Two. (ECF No. 5 at PageID# 32). He provides no further argument. The following state record entries appear to be relevant to Clark's claim that his speedy trial rights were violated:

- Clark was arrested on July 20, 2020. (ECF No. 7-3 at PageID# 333, 347). He was indicted on October 1, 2020. (*Id.* at 212–14). The trial was originally set to take place on January 19, 2021. (*Id.* at PageID# 182).

- The trial court continued the trial date to February 4, 2021, citing security concerns over anticipated protests concerning the Presidential Inauguration (*Id.* at PageID# 182-183).

- On February 5, 2021, the trial court entered a continuance order signed by Clark waiving his speedy trial rights. (*Id.* at PageID# 179). The order

[4] The Court of Appeals did not specifically address Clark's constitutional argument. Because errors in motion to suppress proceedings are the type subject to harmless error analysis, *see Neder v. United States*, 527 U.S. 1, 8 (1999), and the Court of Appeals conducted a prejudice analysis, the Court of Appeals did not "overlook" Clark's Constitutional claim and deferential review is appropriate. *See Johnson v. Williams*, 568 U.S. 289 (2013) (holding that when federal claim has been presented to state court, and state court opinion addresses some but not all of defendant's claims, a rebuttable presumption arises on federal habeas review that state court adjudicated federal claim on merits).

continued the trial date from February 4, 2021, to April 15, 2021, for "discovery and negotiations." (*Id.*).

- On April 16, 2021 the trial court continued the trial date to May 10, 2021. (*Id.* at PageID# 145). The order indicates the continuance was requested by the parties for "negotiation and investigation." (*Id.*) Again, this order waived speedy trial rights and was signed by Clark.

- On May 11, 2021, the trial court continued the trial date to July 22, 2021, to rule on Clark's pending motions. (*Id.* at PageID# 133). Clark also waived his speedy trial rights in this order. (*Id.* at PageID# 57-58). The trial court denied Clark's motions on June 12, 2021. (*Id.* at PageID# 111–12).

- On July 28, 2021, on the state's motion, the trial court continued the trial date to August 6, 2021. (*Id.* at PageID# 110). Clark did not waive his speedy trial rights. (*Id.*).

- On its own motion, on August 26, 2021, the trial court continued the trial date to November 8, 2021. (*Id.* at 102). The order does not indicate a reason, but notes, "time tolls" (*Id.*).

- On November 9, 2021, the trial court continued the trial date, concluding "Trial date of 11/8/21 is hereby VACATED due to Defendant instituting [a writ of mandamus], in which this Court is a named Defendant. This Court shall await resolution of [the writ of mandamus] before it has jurisdiction to address the instant matter." (*Id.* at PageID# 101).

- On August 3, 2022, the trial court set the trial date for September 12, 2022. (*Id.* at PageID# 94).

- On September 12, 2022, the trial court continued the trial date from September 12, 2022, to September 27, 2022, because no jurors were available. (*Id.* at PageID# 92).

- Clark's trial began on September 27, 2022. (ECF No. 7-3 at PageID# 218).

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The speedy-trial right is "amorphous," "slippery," and "necessarily relative," so any claimed violation must be evaluated on an "*ad hoc* basis." *Barker v. Wingo*, 407 U.S. 514, 522, 530 (1972).

In *Barker*, the Supreme Court established four factors for courts to consider when evaluating a speedy trial claim: (1) whether the delay was uncommonly long; (2) the reason for

the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice to the defendant resulted. 407 U.S. at 530. "No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances." *United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017) (citing *Barker*, 407 U.S. at 533).

The first factor is a "threshold" requirement. *Doggett v. United States*, 505 U.S. 647, 652 (1992). The rationale here is that judicial examination of a speedy trial claim is needed only where the delay crosses the line dividing the "ordinary" from the "presumptively prejudicial." *Id*. at 651–52. The Supreme Court has never clearly drawn that line but has noted that "[d]epending on the nature of the charges, the lower courts have generally found post[-]accusation delay 'presumptively prejudicial'" once the delay "approaches one year." *Id*. at 652 n.1, 658. Although "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay." *Id.* at 656 (internal citation omitted).

The second *Barker* factor looks at "whether the government or the criminal defendant is more to blame for th[e] delay." *Id.* at 651. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Barker*, 407 U.S. at 531). Thus, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531.

The third factor relates to "the defendant's responsibility to assert his right," and its effect will depend on the other factors. *Id*. "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal

prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain." *Id*.

The fourth and final *Barker* factor is actual prejudice to the accused. Prejudice is assessed in the light of the defendant's interests, of which there are three: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 532).

The first *Barker* factor serves as a threshold to any Sixth Amendment speedy trial claim. *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530; *see also United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999). A delay is presumed prejudicial when it exceeds one year. *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001); *United States v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994). Here, Clark was arrested on July 20, 2020 (ECF No. 7-3 at PageID# 333, 347) and his trial began on September 27, 2022. (*Id.* at PageID# 215). The delay exceeded one year. Yet the only continuance that is attributable to the state resulted in a delay of just 15 days (July 22, 2021, to August 6, 2021). (ECF No. 7-2. at PageID# 110).

The first continuance (January 19, 2021, to February 4, 2021), was for security reasons related to the Presidential Inauguration. "[V]alid reasons for a delay weigh in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Barker*, 407 U.S. at 531). The delay from September 12, 2022, to September 27, 2022, due to lack of jurors appears to be caused by the COVID-19 pandemic. The Sixth Circuit has treated this as a valid and neutral reason for delay that does not weigh in Clark's favor for a speedy trial calculation. *See*

*United States v. Allen*, 86 F.4th 295, 305 (6th Cir. 2023); *United States v. Jones*, No. 21-3252, 2023 WL 1861317, at *8 (6th Cir. Feb. 9, 2023). The remaining delays were due to negotiations between Clark and the state, Clark's pending motions, and Clark's writ of mandamus to the Court of Appeals, none of which counts against the state.

Clark asserted his speedy trial rights in written motions (ECF No. 7-2 at PageID# 69, 151, 200), but then waived his speedy trial rights when various continuances were entered. (*Id*. at PageID# 133, 134, 145, 179). More to the point, Clark offers no argument for the most important of the *Barker* factors—prejudice. He has not identified how the delay between his arrest and his trial impaired his ability to defend the charges against him. Considering the reason for the delays, Clark's assertion and then waiver his rights, and failure to demonstrate prejudice, the *Barker* factors do not weigh in Clark's favor, and he has not established a meritorious speedy trial claim.

Next, Clark makes a passing reference in Ground Two to his Sixth Amendment right to confront witnesses. (ECF No. 5 at PageID# 32). The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Crawford v. Washington*, 541 U.S. 36, 59 (2004). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The right to cross-examine guaranteed by the Confrontation Clause includes the dual rights "to delve into the witness' story to test . . . perceptions and memory" and impeach the witness by "revealing possible biases, prejudices, or ulterior motives." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

Clark cannot establish a factual basis for a Confrontation Clause claim. The record unquestionably establishes that he was provided with the opportunity to cross-examine every state

witness at trial. (ECF No. 7-3 at PageID# 320-322, 355–61, 384–88). And Clark rested the defense case without calling any witnesses. (*Id.* at PageID# 406). Clark cannot substantiate a Sixth Amendment Confrontation Clause claim.

Clark also asserts a violation of his Ninth Amendment rights in Ground Two with no further detail. (ECF No. 5 at PageID# 32). In his writ of mandamus to the Court of Appeals, Clark argued "9th Amendment, the enumeration of rights shall not be construed to deny or disparage others retained by the people. Is Melvin not a people, now being denied and disparaged his rights to arms, defense, and due process." (ECF No. 7-5 at PageID# 557).

The Ninth Amendment to the U.S. Constitution states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is not an independent source of individual rights protected from infringement by government conduct. *See Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (stating that the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim"). See also, *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 681 (M.D. Tenn. 2020), *aff'd sub nom. Spencer v. City of Henersonville, TN*, No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) ("[T]he Ninth Amendment does not guarantee any particular right, much less any right that is applied against the States by the Fourteenth Amendment . . . ."). The Court should dismiss any claims purportedly brought for violation of the Ninth Amendment.

Finally, as part of Ground Two, Clark contends that his Equal Protection rights were violated under the Fourteenth Amendment. (ECF No. 5 at PageID# 32). Like most of Ground Two, Clark provides the Court with no additional detail. In his writ of mandamus to the Court of Appeals Clark argued, "14th Amendment, IS MELVIN NOT GRANTED EQUAL PROTECTION

UNDER THE LAWS OF OHIO?" (ECF No. 7-5 at PageID# 557). This statement provides the Court with no grounds on which to evaluate an equal protection claim. A habeas petitioner must rely on more than conclusory allegations in order to obtain relief. *See, e.g.*, *Cross*, 238 F. App'x at 39–40; *Alexander v. Rewerts*, No. 18-2211, 2019 WL 5306840, at *2 (6th Cir. Jan. 18, 2019).

The procedurally defaulted parts of Ground Two should be dismissed because they also lack merit.

*iii. Ground Three- failure to provide jury trial, counterclaims, and motions disregarded*

In Ground Three, Clark asserts: "Failure to Provide a Jury Trial. I requested a speedy trial in my initial filings and did not get one in the procedural time period." (ECF No. 5 at PageID# 5). To the extent that Clark is alleging his Sixth Amendment rights were violated because he did not receive a jury trial, the record shows that his case was presented to and decided by a jury. (ECF No. 7-3 at PageID# 7-3 at PageID# 215–51). To the extent Clark seeks federal habeas relief for a separate violation of Ohio statutory law regarding timelines to proceed to trial, the claim is non-cognizable in federal habeas review. "[B]ecause the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treatises of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy trial statute or state case-law interpreting the Ohio statute." *Anderson v. Warden*, No. 1:18-CV-149, 2019 WL 2504355, at *6 (S.D. Ohio Apr. 30, 2019), *report and recommendation adopted*, *Anderson v. Warden*, No. 1:18-CV-149, 2019 WL 2502796 (S.D. Ohio June 17, 2019).

Next, Clark contends that his motions and counterclaims were disregarded. (ECF No. 5 at PageID# 33). The trial judge asked Clark before trial began whether there were any outstanding motions that needed to be addressed. (ECF No. 7-3 at PageID# 229). Clark raised his June 14, 2022, motion, which sought dismissal of the case. (*Id.* at 229–30). The state argued that the motion

should be denied (*id.* at 230–34) and the trial court declined to dismiss the case. (*Id.* at PageID# 241). The trial judge asked Clark whether he had any affirmative defenses (*id.* at PageID# 251) and he was permitted to present them to the court. (*Id.* at PageID# 251–63). After Clark advised the trial court that he desired a trial by jury and intended not to testify, the trial court asked, "Anything additional, Mr. Clark?" (*id.* at PageID# 273) and Clark responded,

> I've expressed how I believe that this is a legal sham. It's been in it's—it's on the docket. It's on the I put it in, and I would really believe that this is a legal sham, but we're entitled to believe whatever we want. I'm ready to go to trial.

(*Id.*). Clark was provided with ample opportunity to advise the trial court of any outstanding motions he believed needed to be addressed and he only identified one.

The record does not substantiate Clark's claim that the trial court committed any error by refusing to rule on his outstanding motions. In any event, Clark has not identified which issues the trial court should have addressed before trial and how the trial court's failure to do so amounts to a deprivation of a constitutional right.

Ground Three is both procedurally defaulted and without merit. It should be dismissed.

## V. CONCLUSION

Clark's claims are without merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 5, 19) be **DENIED** with prejudice.
2. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S.

473, 478 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by a petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that,

if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.

August 27, 2026

*s/ S. Courter M. Shimeall*
S. Courter M. Shimeall
UNITED STATES MAGISTRATE JUDGE